**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY MARCHESE, individually and on behalf of all others similarly situated, | Civil Action No.: 10-2190 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CABLEVISION SYSTEMS CORPORATION, and CSC HOLDINGS, INC., | |
| Defendants. | |

**LINARES, District Judge.**

This matter arises out of allegations that Cablevision employs an illegal tying arrangement in which it uses its market power to require its subscribers to rent cable boxes as a condition of subscribing to its iO TV Package, in violation of, inter alia, Section 1 of the Sherman Act, 15 U.S.C. § 1. Currently before the Court is a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion.[1] No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted, as is Plaintiff's request for leave to amend the Complaint.

---

[1] This Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

Cablevision Systems Corporation and CSC Holdings, Inc. (collectively referred to as Defendant or Cablevision) provides cable programming services to consumers in the New Jersey, New York and Connecticut tri-state area and leases cable set-top boxes to customers in conjunction with its services. (Compl., ¶¶ 2, 6). Cablevision offers two types of cable programming subscriptions – "Broadcast Basic" and iO TV. (Compl., ¶ 19). The iO TV Package includes all channels available through a subscription to Broadcast Basic, as well as certain additional channels and the following digital enhancements: (1) international programming, (2) interactive services, (3) Pay TV, and (4) on Demand. (Compl., ¶¶ 22, 23).

All of the television signals offered through a subscription to an iO TV Package are transmitted by Cablevision in an encrypted format. (Compl., ¶ 5). The cable set-top boxes at issue unscramble the encrypted television signals. (Id.). Thus, in order to access the digital enhancements and full range of channels available through the iO TV Package, Cablevision subscribers must rent a cable set-top box, regardless of whether or not they have a cable-ready television. (Compl., ¶¶ 26, 29). The cable set-top box is distributed exclusively by Cablevision. (Compl., ¶ 7). Subscribers of the iO TV Package must pay a monthly fee to rent cable box, which is in addition to the fee that Cablevision charges for the iO TV Package itself. (Compl., ¶ 30).

Plaintiff, Gary Marchese, brings this action as a representative of a proposed class of Cablevision customers who purchased Premium Cable Services and were required to lease a cable box from Cablevision in order to access those services. (Compl., ¶ 1). Plaintiff alleges that "[b]y tying the sale of a subscription to an iO TV Package to the rental and use of a cable set-top box distributed exclusively by Defendants, Defendants have abused their market power and substantially

2

and unreasonably restrained competition in the market for the rental and sale of cable set-top boxes," in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (Compl., ¶¶ 7, 91).

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## DISCUSSION

Defendant moves to dismiss the Complaint on several grounds including, but not limited to: (1) Cablevision's alleged failure to create technological compatibility constitutes unilateral conduct, not a tying agreement subject to Section 1 of the Sherman Act, and (2) Plaintiff's Complaint fails to allege the essential elements of a per se tying claim.[2]

---

[2]   Defendant also seeks dismissal of Plaintiff's Complaint on the basis that Plaintiff's Complaint is nothing more than an improper attempt to convert a regulatory issue into an unlawful tying scheme.  In this regard, Defendant explains that in 1996, Congress enacted Section 629 of the Communications Act, 47 U.S.C. § 549(a) wherein the FCC was directed to adopt resolutions to promote the nationwide availability of set-top boxes, and that the FCC's regulatory scheme has,

1.       **Antitrust Injury**

As a preliminary matter, private plaintiffs must allege an antitrust injury in order to properly assert a claim for relief under the Sherman Act.   See Allen-Myland, Inc. v. Int'l Bus. Mach. Corp., 33 F.3d 194, 201 (3d Cir. 1994) ("[T]o have standing to bring a private antitrust action, the plaintiff must show 'fact of damage,' defined as some harm flowing from the antitrust violation.").  To show a cognizable antitrust injury, a plaintiff must allege that he suffered an injury that: "(1) is of the type the antitrust laws were intended to prevent and (2) flows from that which makes defendants' acts unlawful." Andela v. The Am. Ass'n For Cancer Research, No. 10-1468, 2010 WL 2893625, at *3 (3d Cir. 2010).

"The antitrust laws were intended to prevent a seller of a product or service from using its market power to coerce the purchase of an additional product or service from it.  Such conduct, if permitted, could restrain competition in the tied product market."  In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig., No. 08-7616, 2010 WL 882989, at *4 (S.D.N.Y. March 5, 2010); see Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 510 -511 (3d Cir. 1998)

---

since then, served as the mechanism for addressing the types of complaints raised in Plaintiff's Complaint.   Plaintiff's attempted end run around that regulatory scheme is, according to the Defendant, improper for the reasons set forth in Verizon Commc's Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004).  This Court finds the circumstances at issue in Trinko to be legally and factually distinguishable from the instant matter.  For instance, in finding that plaintiff had failed to state a claim for violation of § 2 of the Sherman Act, the Court noted that: (a) the activity plaintiff complained of did not violate pre-existing antitrust standards, and (b) given the existence of a regulatory structure designed to deter and remedy the specific anticompetitive harm alleged, "the additional benefit to competition provided by antitrust enforcement will tend to be small."  Trinko, 540 U.S. at 412.  By contrast, Plaintiff's § 1 claim would exist even in the absence of the FCC's regulation.  Therefore, Trinko does not warrant dismissal of Plaintiff's claims. See, e.g., In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig., No. 09-2048, 2010 U.S. Dist. LEXIS 58417, at *24 (W.D. Okla. Jan. 19, 2010) ("Because Plaintiffs' claims would exist even in the absence of the regulation, Trinko has no bearing on the outcome of the present case and Defendants' argument in this regard will be denied.").

("The antitrust concern over tying arrangements arises when the seller can exploit its market power in the tying market to force buyers to purchase the tied product which they otherwise would not, thereby restraining competition in the tied product market.").  Plaintiff's Complaint alleges that: (1) "[i]n order to access any of the channels available as part of a subscription to an iO Package . . . subscribers to an iO Package must rent and use a cable set top box, which is distributed exclusively by Defendants,"[3] (2) such practice has "prevented electronics manufacturers and retail outlets from selling or renting cable set-top boxes directly to Cablevision iO TV subscribers,"[4] (3) "the price which Cablevision charges Plaintiff and members of the Class for the use and rental of its cable set-top boxes far exceeds the price they would have paid to acquire cable set-top boxes in a competitive market which would have existed absent Cablevision's illegal and anticompetitive conduct,"[5] and (4) such an arrangement "has harmed Plaintiff and members of the Class by limiting consumer choice and dampening competition and innovation in the cable set-top box market."[6]  In light of the foregoing, the Court finds that Plaintiff has sufficiently alleged an antitrust injury and has standing to assert a claim for violation of the Sherman Act.  See, e.g., Harrison Aire, Inc. v. Aerostar Intern., Inc., 423 F.3d 374, 385 (3d Cir. 2005) ("This type of injury – prohibitively high consumer prices resulting from allegedly monopolistic behavior – is the type the antitrust laws are designed to redress.").

---

[3] (Compl., ¶ 24).

[4] (Compl., ¶ 55).

[5] (Compl., ¶ 62).

[6] (Compl., ¶ 63).

**2.      Viability of Section 1 Claim**

Count One of Plaintiff's Complaint alleges unreasonable restraint of trade, in violation of

Section 1 of the Sherman Act.  Section 1 of the Sherman Act provides that:

> Every contract, combination in the form of trust or otherwise, or
> conspiracy, in restraint of trade or commerce among the several
> States, or with foreign nations, is declared to be illegal. Every person
> who shall make any contract or engage in any combination or
> conspiracy hereby declared to be illegal shall be deemed guilty of a
> felony, and, on conviction thereof, shall be punished by fine not
> exceeding $100,000,000 if a corporation, or, if any other person,
> $1,000,000, or by imprisonment not exceeding 10 years, or by both
> said punishments, in the discretion of the court.

15 U.S.C. § 1. The Third Circuit has explained that there are four essential elements of a § 1

violation:

> (1) concerted action by the defendants; (2) that produced
> anti-competitive effects within the relevant product and geographic
> markets; (3) that the concerted action was illegal; and (4) that the
> plaintiff was injured as a proximate result of the concerted action.

Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997). Moreover,

"[b]ecause § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade . . . but

only restraints effected by a contract, combination, or conspiracy,' '[t]he crucial question' is whether

the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement,

tacit or express.'" Twombly, 550 U.S. at 553; see Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d

996, 999 (3d Cir. 1994) ("The very essence of a section 1 claim, of course, is the existence of an

agreement. Indeed, section 1 liability is predicated upon some form of concerted action."). As a

result, "stating such a claim requires a complaint with enough factual matter (taken as true) to

suggest that an agreement was made." Twombly, 550 U.S. at 556.

6

Defendant maintains that Plaintiff's Complaint fails to allege the existence of any agreement that conditions the purchase of an iO TV Package subscription on the rental of Cablevision's set-top cable box.   According to Defendant, Plaintiff's Complaint actually challenges Cablevision's unilateral failure to create technological compatibility between its services and cable set-top boxes distributed by third-parties.  Defendant maintains that such allegations – which challenge unilateral conduct by Cablevision, not a tying agreement – fail to state a claim for relief under Section 1 of the Sherman Act.

"To prove a per se illegal tie-in,[7] a plaintiff must establish . . . an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product. . .  [I]n the absence of a formal agreement, a plaintiff must establish in some other way that a tie-in was involved and not merely the sale of two products by a single seller. This can be done by proof that purchase of one product, the tied product, was not voluntary, i.e., by proof of coercion." SmithKline Corp. v. Eli Lilly & Co., 575 F.2d 1056, 1062 n. 3 (3d Cir. 1978); see Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5-6 (1958) ("[A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.").

Plaintiff has alleged the existence of two products[8] sold by Cablevision – a subscription to

---

[7] There is no indication before the Court that Plaintiff seeks to assert a rule of reason tying claim.  See Pl. Opp'n Br. at 1; see generally Eichorn v. AT & T Corp.,  248 F.3d 131, 138 (3d Cir. 2001).

[8] As discussed more fully below, although the Court notes that Plaintiff has alleged the existence of two separate products for purposes of adequately alleging a viable Section 1 claim, the Court does not find that Plaintiff has adequately defined the scope of the tying and tied product markets.

an iO TV Package (the tying product) and a cable box (the tied product) – that are separate and distinct from one another. (Compl., ¶ 30).   See, e.g., In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig., No. 08-7616, 2010 WL 882989, at *4 (S.D.N.Y. March 5, 2010) ("At the pleading stage, the cable box appears to be a product that could be sold separately and profitably because every user of Time Warner's Premium Cable Service is a potential purchaser of a cable box."); see generally Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 462 (1992).  In addition, Plaintiff's Complaint alleges that "[i]n order to access any of the channels available as part of a subscription to an iO Package . . . subscribers to an iO Package must rent and use a cable set top box, which is distributed exclusively by Defendants." (Compl., ¶ 24).  Thus, Plaintiff has alleged the existence of an agreement[9] by Cablevision to sell its iO TV Package, but only on the condition that subscribers also rent its cable set-top box. In light of the foregoing, the Court finds that Plaintiff has alleged a plausible Section 1 claim.  Defendant's motion to dismiss the claim on such a basis is denied.

**3.      Per Se Tying Claim**

Defendant seeks dismissal of Plaintiff's Section 1 claim on the basis that Plaintiff has failed to adequately allege the following elements of a per se tying claim: the tying product market, the geographic market, market power, coercion, foreclosure, and damages.  The Court begins its analysis by assessing the element of coercion.

**A.      Coercion**

As previously stated, to prove an illegal tie-in, a plaintiff must establish, inter alia, an

_____

    [9]  The agreement need not be formal. See SmithKline Corp. v. Eli Lilly & Co., 575 F.2d 1056, 1062 n. 3 (3d Cir. 1978).

agreement by a party to sell one product (the tying product) but only on the condition that the consumer also purchase a different product (the tied product). See N. Pac. Ry., 356 U.S. at 5-6. "Such an arrangement violates § 1 of the Sherman Act if the seller has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." Eastman Kodak, 504 U.S. at 462. In the absence of a formal agreement, a plaintiff can establish the existence of an illegal tie-in by coming forward with proof that they were coerced into buying the tied product. See SmithKline, 575 F.2d at 1062 n. 3. "[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price." N. Pac. Ry., 356 U.S. at 7 n. 4.

Here, Plaintiff claims that Cablevision conditions the receipt of the iO TV Package (and all services associated therewith) on the rental of a cable box. See Compl., ¶ 24 ("In order to access any of the channels available as part of a subscription to an iO Package . . . subscribers to an iO Package must rent and use a cable set top box, which is distributed exclusively by Defendants."). But Plaintiff's Complaint also alleges that consumers have the option of renting a CableCARD which operates as a separate security element that is inserted into a third-party electronic device (such as a "Tivo") and allows consumers to access some of the services comprising the iO TV Package without the need for a cable box. See Compl., ¶¶ 64-70. Thus, Plaintiff acknowledges that CableCARDs are available to Cablevision customers and serve as an alternative to leasing a cable box. See Compl., ¶¶ 64-65. Accepting the allegations set forth in Plaintiff's Complaint as true, CableCARDs were available to those customers who chose not to lease a cable box from Cablevision. Plaintiff does not allege that Cablevision prevented its customers from using CableCARDs with devices purchased from third parties, maintained an inadequate supply of

CableCARDs, or charged a supplemental fee to use the CableCARD in order to access services provided through its iO TV Package. Thus, "[t]he question is whether the existence of the CableCARDs in the marketplace is sufficient to vitiate the plaintiffs' conditioning claim." Downs v. Insight Commc's Co., No. 09-93, 2010 WL 2228295, at *4 (W.D. Ky. June 3, 2010).

Over the past six months, several district courts throughout the country have ruled on whether similar allegations can amount to coercion in the context of a Section 1 violation. Compare Bodet, Jr. v. Charter Comm'c, Inc., Civil Action No. 09-3068 (E.D. La. July 26, 2010) (finding viable claim of coercion); Parsons v. Bright House Networks, No. 09-267, 2010 U.S. Dist. LEXIS 55277 (N.D. Ala. Feb. 23, 2010) (same); In re Cox Enter., Inc. Set-Top Cable Television Box Antitrust Litig., 09-2048, 2010 U.S. Dist. LEXIS 58417 (W.D. Okla. Jan. 19, 2010) (same) with Downs, 2010 WL 2228295, at *4 (finding no viable claim of coercion); In re Time Warner, 2010 WL 882989 (same). Having considered each of the foregoing decisions, as discussed more fully below, this Court agrees with the rationale employed by the Honorable P. Kevin Castel, U.S.D.J., in In re Time Warner, 2010 WL 882989 (as adopted by the Downs court) and finds that Plaintiff's Complaint, as currently drafted, fails to allege a viable claim of coercion.

Plaintiff defines the tying product as a subscription to an iO TV Package. (Compl., ¶ 25). Plaintiff has failed to allege actual coercion with respect to those services comprising the iO TV Package that are available through use of a CableCARD because he has not alleged that Cablevision's sale of such services was conditioned on the lease of a cable box. "Only those services which were unavailable to consumers who opted to use the alternative CableCARD to access secured channels, despite paying an additional fee for the service, caused consumers to be actually coerced into renting a cable box." In re Time Warner, 2010 WL 882989, at *8. Because the Complaint

acknowledges that consumers could access scrambled channels by using a CableCARD with a device purchased from a third-party, those consumers were not actually coerced into leasing the cable box as a condition of purchasing the iO TV Package. See generally N. Pac. Ry., 356 U.S. at 6-7 ("[I]f one of a dozen food stores in a community were to refuse to sell flour unless the buyer also took sugar it would hardly tend to restrain competition in sugar if its competitors were ready and able to sell flour by itself.").  Plaintiff has, therefore, failed to plead a viable claim of coercion. See, e.g., In re Time Warner, 2010 WL 882989, at *6.

The Complaint does allege, however, that there are certain services included in the iO TV Package that cannot be accessed through a CableCARD. For instance, the Complaint alleges that CableCARDs cannot perform "two-way communication and thus do not allow premium cable subscribers to access valuable premium cable services that they have purchased" through the iO TV Package. (Compl., ¶ 65). The Complaint also alleges that Cablevision discloses the limited capability of the CableCARD on its website, stating, in pertinent part, that the following "digital services" are not currently available through use of a CableCARD device: (1) Video On Demand, (2) iO interactive program guide, (3) iO games, and (4) the ability to order Pay Per View events using a remote control. (Compl., ¶ 70).  The Court finds that actual coercion is alleged with respect to the foregoing services to the extent they are separate products tied to the purchase or lease of a cable box. See, e.g., In re Time Warner, 2010 WL 882989, at *7.

The Court is mindful that several district courts have recognized the plausibility of coercion by reasoning that consumers had no choice but to rent a cable box in order to receive the "full panoply" of premium cable services comprising the tying product. See, e.g., Bodet, Jr. v. Charter Comm'c, Inc., Civil Action No. 09-3068 (E.D. La. July 26, 2010) ("It is at least not irrational that

coercion possibly occurs where a seller ensures that a valuable part of a tying product can only be accessed if the customer also rents the tied product from the seller."); Parsons v. Bright House Networks, 2010 U.S. Dist. LEXIS 55277; In re Cox, 2010 U.S. Dist. LEXIS 58417.  The Court agrees with the In re Time Warner court in finding that the Parsons and In re Cox decisions are distinguishable inasmuch as the complaints asserted in those cases contained allegations notably absent from Plaintiff's Complaint – namely, that: (1) defendant charged higher fees for CableCARDs than its cable boxes and misrepresented the availability of CableCARDs,[10] and (2) defendant's employees engaged in conduct which minimized the viability of the use of CableCARDs to receive the full panoply of premium cable services.[11] See In re Time Warner, 2010 WL 882989, at *8.

Accordingly, the Court finds that the availability of the CableCARD as an alternative to the cable box serves as the antithesis of coercion, and that the absence of actual coercion is fatal to Plaintiff's Section 1 claim as currently drafted.   Nevertheless, the Court agrees with the In re Time Warner and Downs courts in noting that Plaintiff may be able to allege a viable tie-in if he amends the contours of his claim.  As explained by Judge Castel:

> It may be that there is a tying product or service, i.e. Premium Cable Services with two-way communications so as to permit on-demand or pay-per-view service, and a tied product, i.e., cable boxes permitting such two-way communications. The absence of a viable alternative to such a tied product within the relevant markets may enable plaintiffs to plead a viable claim of actual coercion. There would be other considerations not present in the Amended Complaint in defining such a claim, e.g., whether and when the two-way service became a separate product market and whether and when Time Warner achieved market power in that market.

---

[10] Parsons, 2010 U.S. Dist. LEXIS 55277, at *17.

[11] In re Cox, 2010 U.S. Dist. LEXIS 58417, at *11, 17-18.

In re Time Warner, 2010 WL 882989, at *8; see Downs, 2010 WL 2228295, at *5 ("The facts alleged might support a claim that those consumers wishing to buy two-way services are coerced into leasing a cable box, but the Amended Complaint does not so limit either the putative class or the product market.").  Absent such an amendment, the existing pleading fails to set forth a plausible allegation of coercion between the whole of the designated tying product (the iO TV Package) and the tied product (the cable box) because only part of the tying product is conditioned on the rental of the tied product. See, e.g., N. Pac. Ry., 356 U.S. at 7 n. 4 ("[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price.").

Defendant's motion to dismiss Plaintiff's section 1 claim is granted.  Plaintiff has thirty (30) days in which to file an Amended Complaint which cures the pleading deficiencies discussed herein.[12]  To the extent Plaintiff chooses to file an Amended Complaint, Plaintiff shall ensure that any future pleading contains sufficient factual allegations to fulfill each of the elements of his claim, with specific reference to any newly asserted definition of the relevant tying product. See Downs, 2010 WL 2228295, at *5.  In addition, Plaintiff should be guided by the following directives set forth by Judge Castel in In re Time Warner:

> While it would be appropriate for this Court to stop at this juncture and simply say that the existing pleading fails to allege actual coercion between the tying and tied products alleged in the Amended Complaint, it may be useful to raise certain other issues which the parties should be prepared to address in any future pleading or motion. For the purposes of assessing both actual coercion and market power, plaintiffs should allege in any further amended

---

[12] Because any newly filed complaint will have to change allegations concerning the product market definition, Cablevision's power within said market and Plaintiff's corresponding damages, the Court declines to rule on the remaining aspects of Defendant's motion at this time.

13

pleading whether satellite and/or optical fiber premium service providers have offered during the limitations period two-way technology permitting on-demand and pay-per-view services in the geographic markets in which plaintiffs assert a claim. That certain of these services may have been available in some geographic markets but not others may have an impact on the definition of the geographic markets or submarkets, but it does not provide a reason for their exclusion from the definition of the product market. See Todd v. Exxon Corp., 275 F.3d 191, 199-200(2d Cir. 2001) ("[A]n alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand-and it must be plausible .... [The product market should not be limited to] a single brand, franchise, institution, or comparable entity that competes with potential substitutes" and plaintiffs must give a "plausible explanation as to why a market should be limited in a particular way."). If satellite and/or optical fiber premium services are available in some geographic markets and not in others, it is incumbent upon plaintiff to plausibly define those geographic markets or submarkets.

In re Time Warner, 2010 WL 882989, at *9.

**4.       Unjust Enrichment Claim**

Defendant moves to dismiss Plaintiff's claim of unjust enrichment on the basis that "Plaintiff's 'unjust' benefit allegation hinges entirely on Plaintiff's tying claim." (Def. Br. at 39). Plaintiff effectively concedes that his unjust enrichment claim, as currently drafted, cannot survive if the Court dismisses Plaintiff's antitrust claim.  Having dismissed Plaintiff's Section 1 claim, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is also granted.

## CONCLUSION

Based on the reasons set forth above, Defendant's motion to dismiss is granted.  Plaintiff's Complaint is hereby dismissed in its entirety without prejudice.  Plaintiff has thirty (30) days in

which to file an Amended Complaint which cures the pleading deficiencies discussed above.

      An appropriate Order accompanies this Opinion.


                                    /s/ Jose L. Linares

DATED: August 18, 2010                   JOSE L. LINARES,
                                    UNITED STATES DISTRICT JUDGE