NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY MARCHESE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABLEVISION SYSTEMS CORPORATION, and CSC HOLDINGS, INC.,<br><br>Defendants. | Civil Action No.: 10-2190 (JLL)<br><br><br>**OPINION** |

**LINARES, District Judge.**

This matter arises out of allegations that Cablevision employs an illegal tying arrangement in which it uses its market power to require its subscribers to rent cable boxes as a condition of subscribing to its iO TV Package, in violation of, <u>inter alia</u>, Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Currently before the Court is a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion.[1] No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted, as is Plaintiff's request for leave to file a Second Amended Complaint.

---

[1] This Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND[2]

Cablevision Systems Corporation and CSC Holdings, Inc. (collectively referred to as Defendant or Cablevision) provides cable programming services to consumers in the New Jersey, New York and Connecticut tri-state area and leases cable set-top boxes to customers in conjunction with its services. (Am. Compl., ¶¶ 2, 4). Cablevision offers at least two types of cable programming subscriptions – "Broadcast Basic" and iO TV. (Am. Compl., ¶ 28). The iO TV Package includes all channels available through a subscription to Broadcast Basic, as well as certain additional channels and the following digital enhancements: (1) international programming, (2) interactive services, (3) Pay TV, and (4) on Demand. (Am. Compl., ¶¶ 28, 29). These digital enhancements are also known as "Two Way Services." (Id.).

All of the television signals offered through a subscription to an iO TV Package are transmitted by Cablevision in an encrypted format. (Am. Compl., ¶ 34). The cable set-top boxes at issue unscramble the encrypted television signals. (Id.). Thus, in order to access the Two Way Services available through the iO TV Package, Cablevision subscribers must rent a cable set-top box. (Am. Compl., ¶ 35). The cable set-top box is distributed exclusively by Cablevision. (Id.). Subscribers of the iO TV Package must pay a monthly fee to rent a cable box, which is in addition to the fee that Cablevision charges for the iO TV Package itself. (Am. Compl., ¶ 14).

Plaintiff, Gary Marchese, brings this action as a representative of a proposed class of Cablevision customers who purchased Two Way Services and were required to lease a cable box from Cablevision in order to access those services. (Am. Compl., ¶ 1). Plaintiff alleges that "[b]y

---

[2] The operative complaint in this matter is the Amended Complaint. See Docket Entry No. 34.

tying the sale of a subscription to an iO TV Package with Two Way Services to the rental and use of a cable set-top box distributed exclusively by Cablevision that permits two way communications, Defendants have abused their market power and substantially and unreasonably restrained competition in the market for the rental and sale of cable set-top boxes that permit two way communications," in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (Am. Compl., ¶¶ 7, 10, 91).  Plaintiff also alleges that Cablevision wrongfully acquired and maintained a monopoly in the market for set-top boxes permitting Two Way Services by programming its cable system "to not provide service to cable set-top boxes that are otherwise capable of two way communications but are not distributed by Cablevision" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. (Am. Compl., ¶ 151).

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**DISCUSSION**

I.   **Section 1 Claims**

    A.   **Per Se Tying**

The Court has previously ruled on this claim. In its August 18, 2010 Opinion, the Court held, in pertinent part, as follows:

> Plaintiff defines the tying product as a subscription to an iO TV Package. (Compl., ¶ 25). Plaintiff has failed to allege actual coercion with respect to those services comprising the iO TV Package that are available through use of a CableCARD because he has not alleged that Cablevision's sale of such services was conditioned on the lease of a cable box. "Only those services which were unavailable to consumers who opted to use the alternative CableCARD to access secured channels, despite paying an additional fee for the service, caused consumers to be actually coerced into renting a cable box." In re Time Warner, 2010 WL 882989, at *8. Because the Complaint acknowledges that consumers could access scrambled channels by using a CableCARD with a device purchased from a third-party, those consumers were not actually coerced into leasing the cable box as a condition of purchasing the iO TV Package. See generally N. Pac. Ry., 356 U.S. at 6-7 ("[I]f one of a dozen food stores in a community were to refuse to sell flour unless the buyer also took sugar it would hardly tend to restrain competition in sugar if its competitors were ready and able to sell flour by itself."). Plaintiff has, therefore, failed to plead a viable claim of coercion. See, e.g., In re Time Warner, 2010 WL 882989, at *6.
>
> The Complaint does allege, however, that there are certain services included in the iO TV Package that cannot be accessed through a CableCARD. For instance, the Complaint alleges that CableCARDs cannot perform "two-way communication and thus do not allow premium cable subscribers to access valuable premium cable services that they have purchased" through the iO TV Package. (Compl., ¶ 65). The Complaint also alleges that Cablevision discloses the limited capability of the CableCARD on its website, stating, in pertinent part, that the following "digital services" are not currently available through use of a CableCARD device: (1) Video On Demand, (2) iO interactive program guide, (3) iO games, and (4) the ability to order Pay Per View events using a remote control. (Compl., ¶ 70). The

> Court finds that actual coercion is alleged with respect to the foregoing services to the extent they are separate products tied to the purchase or lease of a cable box. See, e.g., In re Time Warner, 2010 WL 882989, at *7.
>
> * * *
>
> Nevertheless . . . Plaintiff may be able to allege a viable tie-in if he amends the contours of his claim. . . . Absent such an amendment, the existing pleading fails to set forth a plausible allegation of coercion between the whole of the designated tying product (the iO TV Package) and the tied product (the cable box) because only part of the tying product is conditioned on the rental of the tied product. See, e.g., N. Pac. Ry., 356 U.S. at 7 n. 4 ("[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price.").

(August 18, 2010 Opinion).  Plaintiff did not file a motion for reconsideration of this Court's August 18, 2010 Opinion.  Instead, Plaintiff chose to file an Amended Complaint.  The Amended Complaint does not, however, limit the tying product to Two Way Services.  Instead, the Amended Complaint describes the tying product as "an iO TV Package with two communications so as to permit Two Way Services." (Am. Compl., ¶ 32); thus, the tying product remains an iO TV Package (which is comprised of both one-way and two-way services).   Plaintiff had, for all intents and purposes, chosen to stand by his initial Complaint with respect to this claim.  As previously held by this Court, Plaintiff has failed to allege a plausible claim of coercion between the whole of the designated tying product (the iO TV Package) and the tied product (the cable box) because, as Plaintiff concedes, only part of the tying product (Two Way Services) is conditioned on the rental of the tied product.  (Am. Compl., ¶¶ 10, 25).

Lastly, the Court notes that Plaintiff has included several new allegations that Cablevision has engaged in conduct which minimizes the viability of the CableCARD as an alternative to the

cable box. These include that Cablevision charged a fee for the installation of a CableCARD, and that Cablevision required subscribers to set up an appointment to have a Cablevision technician visit the home to install the CableCARD, neither of which were required of renters of cable boxes. The Court finds that such allegations, without more, fail to support a section 1 claim of coercion. See generally Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 540 (9th Cir. 1983) ("'Some modicum' of involuntariness or coercion is thus essential to the existence of a per se illegal tie-in."). Therefore, Plaintiff's section 1 per se tying claim is once again dismissed. Because Plaintiff has requested leave to amend, the Court's dismissal in this regard is without prejudice.

### B. Rule of Reason

Tying arrangements can be deemed illegal per se or be found to violate the rule of reason. See, e.g., Heartland Payment Sys. v. Micros Sys., Inc., No. 07-5629, 2008 WL 4510260, at *6 n. 6 (D.N.J. Sept. 29, 2008). Per se liability exists where "the seller's share of the market is high or when the seller offers a unique product that competitors are not able to offer." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 17 (1984), abrogated on other grounds by Illinois Tool Works, Inc. v. Independent Ink, Inc., 547 U.S. 28 (2006)). In such cases, courts have held that "the likelihood that market power exists and is being used to restrain competition in a separate market is sufficient to make per se condemnation appropriate." Id. By contrast, when the "seller does not have either the degree or the kind of market power that enables him to force customers to purchase a second, unwanted product in order to obtain the tying product, an antitrust violation can be established only by evidence of an unreasonable restraint on competition in the relevant market." Id. at 17-18.

Plaintiff's Amended Complaint alleges that the tying arrangement described above is per se

illegal and, in the alternative, unlawful under a rule of reason analysis. Under the rule of reason theory, Plaintiff has "the more difficult burden of showing that the arrangement violated the rule of reason because it unreasonably restrained competition in the tied product market." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 511 (3d Cir. 1998).

Defendant moves to dismiss this claim on the basis that the same defects that warrant dismissal of Plaintiff's per se tying claim require dismissal of the rule of reason claim. In particular, Defendant argues that a rule of reason tying claim requires a tie-in, but absent coercion, no tying arrangement exists here. Although Defendant cites to no caselaw in support of this argument, as a practical matter, the Court agrees that Plaintiff's rule of reason claim is based upon the same alleged tying arrangement underlying its per se tying claim. See Am. Compl., ¶ 148 ("In the alternative, Defendants' tying arrangement violated Section 1 under the Rule of Reason for the reasons set for above."). Plaintiff essentially concedes that this claim hinges on the viability of his per se tying claim. See Pl. Opp'n Br. at 32 ("[B]ecause Plaintiffs have adequately alleged a per se tying claim, they have also alleged a rule of reason claim."). Having dismissed Plaintiff's per se tying claim on the basis that Plaintiff has failed to allege a viable tying arrangement, this claim is likewise dismissed without prejudice.

**II.     Section 2 Claim**

    **A.     Monopolization**

Section 2 of the Sherman Act provides that:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction

> thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Thus, § 2 of the Sherman Act proscribes (1) actual monopolization, (2) attempted monopolization, and (3) conspiracies to monopolize. See, e.g., McPherson's. Ltd. v. Never Dull, Inc., No. 90-2070, 1990 WL 238812, at * 5 (Dec. 26, 1990). Count Two of Plaintiff's Amended Complaint alleges actual monopolization under § 2. In particular, Count Two alleges the following:

> Cablevision, to enforce its tying arrangement, programs its cable MVPD system to not provide service to cable set-top boxes that are otherwise capable of two way communications, but are distributed Cablevision. By taking such steps, Cablevision effectively excluded all actual and potential competition for the distribution of set-top boxes permitting two way communications to Cablevision's io TV subscribers, since such steps ensure that no set-top boxes other than those distributed by Cablevision permit iO TV subscribers to access the Two Way Services included in the iO TV Package."

(Am. Compl., ¶ 151).

The Third Circuit has indicated that a § 2 violation generally consists of two elements: "(1) possession of monopoly power [in the relevant product market] and (2) '. . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" United States v. Dentsply Int'l, Inc., 399 F.3d 181, 186 (3d Cir. 2005) (citing Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 480 (1992)). In this regard, Plaintiff has the burden of defining the relevant product market. See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass

8

all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." Id.

Plaintiff's Amended Complaint alleges that the relevant product market for purposes of this claim is "the market for set-top boxes permitting two way communications between Cablevision and iO TV subscribers." (Am. Compl., ¶ 150). Thus, Plaintiff seeks to limit the relevant market to those cable boxes which are distributed by Cablevision. Defendant moves to dismiss this claim on the basis that Plaintiff cannot limit the market only to Cablevision-specific boxes.

Generally speaking, "the test for a relevant market is not commodities reasonably interchangeable by a particular plaintiff, but 'commodities reasonably interchangeable by consumers for the same purposes.'" Queen City Pizza, 124 F.3d at 438. Plaintiff correctly notes that "in some circumstances, a single brand of a product of service may constitute a relevant market." Queen City Pizza, 124 F.3d at 439. This is so where "the commodity is unique, and therefore not interchangeable with other products." Id. Here, however, it is uncontested that "there is nothing special or unique about the set-top boxes' hardware distributed by Cablevision." (Am. Compl., ¶ 152). More specifically, the Amended Complaint explains that "the set-top boxes distributed by Cablevision use the same standard technology employed throughout the cable industry." (Am. Compl., ¶ 152). Indeed, "the third party that manufactures the set-top boxes distributed by Cablevision (Scientific Atlanta, a subsidiary of Cisco) sells substantially the same set-top box to other cable operators." (Id.). Because the Amended Complaint limits the relevant product market to Cablevision-specific boxes but admits that Cablevision-specific boxes are, in fact, not unique and are interchangeable with other cable boxes available on the market, Plaintiff has failed to allege a viable relevant market. See, e.g., Queen City Pizza, 124 F.3d at 440 ("Since the product was unique,

9

and not interchangeable with any other products, it constituted its own relevant market for antitrust purposes. By contrast, Domino's does not sell a unique product or service. Franchisees must buy Domino's-approved supplies and ingredients not because they are unique but because they are obligated by contract to do so.").

Moreover, to the extent the Amended Complaint should be construed as stating a claim that an "aftermarket" for Cablevision-compatible cable boxes is a relevant market for antitrust purposes, the Court finds that such claim, as currently drafted, also fails as a matter of law inasmuch as the Amended Complaint does not allege that the conduct challenged was not authorized or otherwise disclosed at the time Plaintiff chose to subscribe to Cablevision. See, e.g., Queen City Pizza, 124 F.3d at 440 ("The franchise transaction between Domino's Pizza, Inc. and Plaintiffs was subjected to competition at the pre-contract stage. That cannot be said of the conduct challenged in Kodak because it was not authorized by contract terms disclosed at the time of the original transaction."). The Court reads the Amended Complaint as alleging that Plaintiff, and other Cablevision subscribers, are (or were) prevented from renting or purchasing cable boxes from other sources not because Cablevision has created a unique or innovative product, but rather, based on an internal Cablevision policy or practice dating back to 2001. (Am. Compl., ¶ 52). Absent a change in that policy (or other circumstances not alleged here), the Court has no basis on which to find plausible a relevant market limited to Cablevision-compatible boxes. See, e.g., Queen City Pizza, 124 F.3d at 440 (finding no viable product market limited to Domino's-approved supplies where "the Domino's franchisees could assess the potential costs and economic risks at the time they signed the franchise agreement."). The Court, therefore, dismisses Plaintiff's section 2 claim, without prejudice, for failure to plead a valid relevant market.

### III. State Law Claim

#### A. Unjust Enrichment

Defendant moves to dismiss Plaintiff's claim of unjust enrichment on the basis that "[d]ismissal of Plaintiffs' antitrust claims requires dismissal of the state-law unjust enrichment claim. Because the allegations of "unjust" enrichment hinge on showing Cablevision's conduct to be "unlawful," dismissal of Plaintiffs' antitrust claims terminates the state-law claims." (Def. Br. at 39-40). Plaintiff effectively concedes that his unjust enrichment claim, as currently drafted, cannot survive if the Court dismisses Plaintiff's antitrust claim. See Pl. Opp'n Br. at 40 ("Because Plaintiffs have stated a claim for tying, Plaintiffs have stated a claim for unjust enrichment."). Having dismissed Plaintiff's antitrust claims, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is also granted.

### CONCLUSION

Based on the reasons set forth above, Defendant's motion to dismiss is granted. Plaintiff's Amended Complaint is hereby dismissed in its entirety without prejudice. Plaintiff has (60) days in which to file a Second Amended Complaint which cures the pleading deficiencies discussed above.

An appropriate Order accompanies this Opinion.


DATED: January 14, 2011

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE