NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY MARCHESE, individually and on behalf of all others similarly situated, | Civil Action No.: 10-2190 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CABLEVISION SYSTEMS CORPORATION, and CSC HOLDINGS, INC., | |
| Defendants. | |

**LINARES, District Judge.**

This matter arises out of allegations that Cablevision employs an illegal tying arrangement in which it uses its market power to require its subscribers to rent cable boxes as a condition of subscribing to its "Two Way Services," as defined herein, in violation of, <u>inter alia</u>, Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Currently before the Court is a motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion.[1] No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted in part and denied in part.

---

[1] This Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND[2]

Cablevision Systems Corporation and CSC Holdings, Inc. (collectively referred to as Defendant or Cablevision) provides cable programming services to consumers in the New Jersey, New York and Connecticut tri-state area and leases cable set-top boxes to customers in conjunction with its services. (Sec. Am. Compl., ¶¶ 2, 4). Among the services provided by Cablevision are services provided through bi-directional or two way communications between Cablevision and its subscribers. (Sec. Am. Compl., ¶ 2). These services, referred to hereinafter as "Two Way Services," include: (a) certain digital channels and international programming, (b) interactive services (including the interactive program guide), (c) pay-per-view ("Pay TV"), and (d) Video on Demand. (Id.). The Two Way Services are provided through (and are considered a "significant portion of") the iO TV Package. (Id.; ¶ 37).

In order to access Two Way Services, Cablevision requires its subscribers to rent and use a cable set-top box, distributed exclusively by Cablevision. (Sec. Am. Compl., ¶¶ 5, 6, 38, 41, 87). In order to rent a cable set-top box that allows access to Two Way Services, Cablevision subscribers must pay a monthly fee that is in addition to the fee that Cablevision charges for the iO TV Package itself. (Sec. Am. Compl., ¶ 139).  Cablevision also distributes a device known as a CableCARD. (Sec. Am. Compl., ¶ 85, Ex. 1).  CableCARDs do not, however, perform two way communications; thus, CableCARDs do not allow Cablevision subscribers to access Two Way Services. (Sec. Am. Compl., ¶¶ 40, 84).

Plaintiff, Gary Marchese, brings this action as a representative of a proposed class of Cablevision customers who purchased Two Way Services and were required to lease a cable box

---

[2] The operative complaint in this matter is the Second Amended Complaint.

from Cablevision in order to access those services. (Sec. Am. Compl., ¶¶1, 14). Plaintiffs allege that "[b]y tying Two Way Services to the rental and use of a cable set-top box distributed exclusively by Cablevision, Defendants have abused their market power in the tying product market and substantially and unreasonably restrained competition in the tied product market" in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Sec. Am. Compl., ¶ 7). Plaintiffs also allege that Cablevision's "artificial exclusion of all other set-top boxes capable of providing access to Two Way Services, including boxes of the exact same make and model as those rented from Cablevision (simply because those boxes are not distributed by Cablevision) enabled (and enables) Defendants to create and maintain a monopoly in the market for the distribution of set-top boxes providing access to Two Way Services in the areas in which Cablevision operates," in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. (Sec. Am. Compl., ¶ 9). Plaintiffs also allege that Cablevision has been unjustly enriched, under various states' laws, by virtue of the foregoing conduct.

The Court has now ruled on two of Plaintiffs' prior complaints. Because the Court writes only for the parties, the Court will not repeat each aspect of its prior holdings or the procedural history of this matter; rather, the Court will simply incorporate by reference its prior Opinions dated August 18, 2010 and January 14, 2011. Suffice to say that Plaintiffs' original complaint was filed in April 2010. Plaintiffs' original complaint was dismissed without prejudice by the Court in August 2010. Plaintiffs filed an Amended Complaint in September 2010. Plaintiffs' Amended Complaint was, again, dismissed without prejudice by the Court in January 2011. Plaintiffs filed a Second Amended Complaint in March 2011. The Second Amended Complaint is now the operative complaint in this matter (referred to hereinafter as "Second Amended Complaint" or "Complaint"). Cablevision, once again, seeks dismissal of the claims asserted in Plaintiffs' Second Amended

Complaint. Having now granted Plaintiffs leave to amend the deficiencies in their claims on <u>two</u> prior occasions, the Court turns to the arguments raised by Defendants seeking dismissal of Plaintiffs' claims <u>with</u> prejudice.

## **LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

## **DISCUSSION**

I.   **Section 1 Claims**

   A.   **Per Se Tying**

As a threshold matter, to prove an illegal tie-in, a plaintiff must establish, <u>inter</u> <u>alia</u>, an agreement by a party to sell one product (the tying product) but only on the condition that the consumer also purchase a different product (the tied product). <u>See</u> <u>Northern Pac. Ry. Co. v. United States</u>, 356 U.S. 1, 5-6 (1958). "Such an arrangement violates § 1 of the Sherman Act if the seller

4

has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 462 (1992).

### 1.     Coercion

The Court previously dismissed this claim because Plaintiffs had failed to allege a plausible claim of coercion between the whole of the designated tying product (the iO TV Package) and the tied product (the cable box) because only part of the tying product (Two Way Services) is conditioned on the rental of the tied product. See Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 7 n. 4 (1958) ("[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price."). Plaintiffs have now amended this claim such that the tying product is now comprised of Two Way Services. (Sec. Am. Compl., ¶¶1, 7, 14). In particular, the Complaint alleges that in order to access Two Way Services, Cablevision requires its subscribers to rent and use a cable set-top box, distributed exclusively by Cablevision. (Sec. Am. Compl., ¶¶ 5, 6, 38, 41, 87).  Finally, the Complaint alleges that CableCARDs – although offered by Cablevision as an alternative to the rental of a cable-box – do not perform two way communications and thus do not allow Cablevision subscribers to access Two Way Services. (Sec. Am. Compl., ¶¶ 40, 84).

Although the foregoing allegations would suggest that Plaintiffs have now pled a viable claim of coercion, Defendant points out a discrepancy between Plaintiffs' definition of Two Way Services and the contents of an exhibit attached to Plaintiffs' Complaint. In particular, Plaintiffs define Two Way Services as: (a) certain digital channels and international programming, (b) interactive services

(including the interactive program guide), (c) pay-per-view ("Pay TV"), and (d) Video on Demand. (Sec. Am. Compl., ¶ 2). The Complaint goes on to allege that in order to access Two Way Services, Cablevision requires its subscribers to rent and use a cable set-top box, distributed exclusively by Cablevision. (Sec. Am. Compl., ¶¶ 5, 6, 38, 41, 87). The Exhibit attached to Plaintiff's Complaint indicates, however, that "Switched Digital Video Services" – which seemingly include the "digital channels and international programming" referenced above – may be viewed with a "digital cable box **or** a TiVo/Moxi HD DVR equipped with a CableCARD and Tuning Adapter." (Ex. 1 to Sec. Am. Compl.) (emphasis added). Because Plaintiffs have attached a document to their Complaint which states that a portion of the tying product (i.e., the "digital channels and international programming" portion of Two Way Services) can be accessed by Cablevision subscribers without the rental of the tied product (the cable box), the Court agrees that Plaintiffs have once again failed to state a claim of coercion that is plausible on its face. See Iqbal, 129 S.Ct. at 1949.

### 2. Market Power

"[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." Illinois Tool Works Inc. v. Independent Ink, Inc., 547 U.S. 28, 46 (2006); Allen-Myland, Inc. v. International Business Machines Corp., 33 F.3d 194, 200 -201 (3d Cir. 1994) ("The first inquiry in any § 1 tying case is whether the defendant has sufficient market power over the tying product . . . . If the defendant is found to have sufficient market power in the tying product market, then the tie may be a 'per se' violation of the Sherman Act."). "An assessment of market power must be grounded in the relevant product market." In re Set-Top Cable Television Box Antitrust Litig., 2011 WL 1432036, at *11 (S.D.N.Y. April 8, 2011) (citing PepsiCo, Inc. v.

Coca-Cola Co., 315 F.3d 101, 108 (2d Cir. 2002).

In this regard, Plaintiffs allege the following:

- "Despite . . . significant annual price increases, Cablevision has been able to add subscribers with Two Way Services. For instance, from December 2006 through the end of the Fourth Quarter of 2007, the total number of subscribers with Two Way Services increased by approximately 181,000 or 7.4%." (Sec. Am. Compl., ¶ 50).

- "Cablevision's substantial monopoly power, market power and/or economic power in the tying product market is evidenced by, inter alia, the fact that approximately 2.9 million of Cablevision's 3.0 million customers subscribe to Two Way Services through an iO Package. This represents nearly 97% of Cablevision's customers." (Sec. Am. Compl., ¶ 44).

- "Cablevision has repeatedly claimed that it has the highest penetration among digital cable providers in the nation." (Id.).

- "[T]he FCC has indicated that in the New York designated market area (DMA), in which Cablevision operates, the market share of cable operators like Cablevision far exceeds the national average of 63.5% of multi-channel video programming distribution (MVPD) subscriptions. Indeed the FCC indicated that, in the New York DMA, cable operators enjoy an 88.5% market share of MVDP subscriptions, the highest of the DMAs." (Sec. Am. Compl., ¶ 45).

- "Since major cable operators like Cablevision all offer Two Way Services as part of their premium cable packages, the market share numbers described above demonstrate that Cablevision has a dominant share of the Two Way Services market." (Sec. Am. Compl., ¶ 46).

Its clear to the Court that, in attempting to allege market power, the Second Amended Complaint conflates Cablevision's provision of Two Way Services with its provision of all cable programming. Plaintiffs essentially concede as much. See Pl. Opp'n Br. at 19 ("Cablevision's MVPD share is directly related to its Two Way Services share because Two Way Services are MVPD services with one way services."). For instance, the allegations concerning increasing prices is an average that

7

accounts for different packages that include – but are not limited to – the relevant product of Two Way Services.  Moreover, Plaintiffs argue that "[t]he market reality that Cablevision sells its Two Way Services with one way services, as part of packages, does not change the fact that Cablevision dominates the Two Way Services market, with upwards of 90% of the market for Two Way Services in the geographic market in which Cablevision operates." (Pl. Opp'n Br. at 4).  But Plaintiffs have alleged no specific facts to support the theory that dominance in a market that includes multiple products – both one way and Two Way Services – equates to dominance in the Two Way Services market.  See, e.g., In re Set-Top Cable Television Box Antitrust Litig., 2011 WL 1432036, at *12 ("For the purpose of alleging market power, the relevant consideration is whether the price of Premium Cable Service subscriptions rose at the same time that the number of subscribers grew, as opposed to an average price increase across multiple products.").  Nor have Plaintiffs alleged any specific facts which would allow the Court to otherwise infer that Two Way Services – as opposed to the one way services – drive the most demand within the relevant packages.

   As properly stated by the Honorable P. Kevin Castel, U.S.D.J., in the context of the In re Set-Top Cable Television Box Antitrust Litigation proceeding in the Southern District of New York, "[i]t would be as if a plaintiff had adequately alleged a product market consisting of orange juice, but relied on the defendant's position in the overall beverage industry as evidence of market power." Id.  Absent some factual content directed specifically at Cablevision's market power in the Two Way Services market – as opposed to market power in the broader category of cable services that include one way services – Plaintiffs have failed to allege a plausible theory of market power over the tying product.  See, e.g., In re Set-Top Cable Television Box Antitrust Litig., 2011 WL 1432036, at *13 (finding that plaintiffs had failed to allege that Time Warner exercised market power in the

tying product market where plaintiff's allegations were "based on overinclusive allegations going toward Time Warner's overall subscriptions, and not merely subscriptions to Premium Cable Services [the tying product].").

Defendant urges the Court to dismiss Plaintiff's Section 1 per se tying claim, <u>with</u> prejudice, inasmuch as the Court has already afforded Plaintiffs with two separate opportunities in which to cure the pleading deficiencies in this claim. Although Defendant's point is well taken, given that Plaintiffs have now made a good faith effort to amend the theory of coercion underlying their Section 1 per se tying claim in a manner that generally adheres to the directives set forth in this Court's prior Orders, the Court will afford Plaintiffs with one final opportunity in which to amend this claim, should they so choose. Accordingly, Defendant's motion to dismiss Plaintiffs' Section 1 per se tying claim is granted; Plaintiff's Section 1 per se tying claim is hereby dismissed without prejudice.

      **B.**    **Rule of Reason**

Plaintiff's Amended Complaint alleges that the tying arrangement described above is per se illegal and/or, in the alternative, unlawful under a rule of reason analysis. Per se liability exists where "the seller's share of the market is high or when the seller offers a unique product that competitors are not able to offer." <u>Jefferson Parish Hosp. Dist. No. 2 v. Hyde</u>, 466 U.S. 2, 17 (1984), abrogated on other grounds by <u>Illinois Tool Works, Inc. v. Independent Ink, Inc.</u>, 547 U.S. 28 (2006)). In such cases, courts have held that "the likelihood that market power exists and is being used to restrain competition in a separate market is sufficient to make per se condemnation appropriate." <u>Id.</u> By contrast, when the "seller does not have either the degree or the kind of market

9

power that enables him to force customers to purchase a second, unwanted product in order to obtain the tying product, an antitrust violation can be established only by evidence of an unreasonable restraint on competition in the relevant market." Id. at 17-18.

Thus, in order to properly allege a rule of reason claim, Plaintiffs must allege that Cablevision's tying arrangement unreasonably restrained competition in the tied product market – that is, in the market for cable boxes. See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 511 (3d Cir. 1998) ("Where appreciable tying market power cannot be shown, inquiry into the tied product market cannot be avoided, and the plaintiff therefore has the more difficult burden of showing that the arrangement violated the rule of reason because it unreasonably restrained competition in the tied product market.").

The Court declines to rule on the viability of Plaintiffs' Section 1 rule of reason claim at this time for two reasons. First, Plaintiffs concede that their Section 1 per se tying and rule of reason claims are largely overlapping. See Pl. Opp'n Br. at 32. Having found certain deficiencies remaining in Plaintiffs' per se tying claim, the Court finds that the more prudent approach would be to allow Plaintiffs to cure such deficiencies before ruling on the related arguments raised by Defendant in support of dismissal of this claim.[3] Secondly, based on the reasons set forth below, the Court finds deficiencies in Plaintiffs' definition of the tied product market for purposes of Plaintiffs' Section 2 monopolization claim. Because Plaintiffs' rule of reason claim also presupposes the

---

[3] Defendant moves to dismiss this claim for several reasons: (1) Plaintiffs' rule of reason tying claim requires a tie-in, but absent coercion, no tying arrangement exists here; (2) any foreclosure of competition in the market for cable boxes – as alleged by Plaintiffs – flows not from a tie but from Cablevision's refusal to deal (or a "technological incompatibility" created by Cablevision); and (3) Plaintiffs have failed to properly allege damages because the Second Amended Complaint contains no allegations that the price for the package of the tying and tied product would have been lower absent the tie.

viability of its alleged tied product market, the Court finds that any ruling on Plaintiffs' rule of reason claim would be better made once Plaintiffs have fully amended the contours of their alleged tied product market. Accordingly, Defendants' motion to dismiss this claim is denied without prejudice.

**II.     Section 2 Claim**

**A.     Monopolization**

The Third Circuit has indicated that a § 2 violation generally consists of two elements: "(1) possession of monopoly power [in the relevant product market] and (2) '. . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" United States v. Dentsply Int'l, Inc., 399 F.3d 181, 186 (3d Cir. 2005) (citing Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 480 (1992)). In this regard, Plaintiffs have the burden of defining the relevant product market. See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." Id.

Plaintiffs' Second Amended Complaint defines the relevant product market for purposes of this claim as "the market for distribution of set-top boxes that provide access to Two Way Services" (Sec. Am. Compl., ¶ 111). The Court previously dismissed this claim for two reasons: (1) Plaintiffs had attempted to limit the relevant product market to Cablevision-specific boxes but admitted that

11

Cablevision-specific boxes are, in fact, not unique and are interchangeable with other cable boxes available on the market,[4] and (2) to the extent Plaintiffs had attempted to assert a claim that an "aftermarket" for Cablevision-compatible cable boxes is a relevant market for antitrust purposes, Plaintiffs had failed to allege that the conduct challenged was not authorized or otherwise disclosed at the time Plaintiff chose to subscribe to Cablevision.[5] See January 14, 2011 Opinion (containing more detailed discussion of the elements of a Section 2 monopolization claim and the Court's reasoning for dismissing said claim).

The Court has carefully considered the arguments raised in support of and in opposition to this claim against the backdrop of this Court's January 14, 2011 Opinion. Suffice it to say that Plaintiffs have amended the relevant product market in such a way that the Court cannot decipher whether such product market is, once again, limited to those boxes distributed exclusively by Cablevision (i.e., "Cablevision-specific boxes"). See, e.g., Sec. Am. Compl., ¶ 111 ("The relevant market for purposes of the Section 2 monopolization claim is the market for distribution of set-top boxes that provide access to Two Way Services"); ¶112 ("But for Cablevision's illegal exclusion, other set-top boxes, including those of the same make and model as Cablevision, would provide access to Two Way Services"); ¶113 ("Because the set-top boxes distributed by Cablevision are the

---

[4] See, e.g., Queen City Pizza, 124 F.3d at 440 ("Since the product was unique, and not interchangeable with any other products, it constituted its own relevant market for antitrust purposes. By contrast, Domino's does not sell a unique product or service. Franchisees must buy Domino's-approved supplies and ingredients not because they are unique but because they are obligated by contract to do so.").

[5] See, e.g., Queen City Pizza, 124 F.3d at 440 ("The franchise transaction between Domino's Pizza, Inc. and Plaintiffs was subjected to competition at the pre-contract stage. That cannot be said of the conduct challenged in Kodak because it was not authorized by contract terms disclosed at the time of the original transaction.").

same as those deployed on many other cable systems, the only reason that Cablevision can maintain its monopoly is by excluding set-top boxes that it does not distribute from providing access to Two Way Services.").

Although Plaintiffs maintain, in their opposition brief, that their amended relevant market "is not limited to boxes distributed by Cablevision,"[6] the above allegations, quoted directly from the Second Amended Complaint, seem to suggest otherwise. See, e.g., Sec. Am. Compl., ¶113 ("Because the set-top boxes distributed by Cablevision are the same as those deployed on many other cable systems, the only reason that Cablevision can maintain its monopoly is by excluding set-top boxes that it does not distribute from providing access to Two Way Services."). Similarly, although Plaintiffs repeatedly argue that their proposed Section 2 relevant market "is not a single product market,"[7] the Second Amended Complaint contains no facts which would allow the Court to reasonably infer that Cablevision possess monopoly power in the relevant market of <u>all</u> two-way boxes – that is, all cable boxes that allow two way communications, not simply those cable boxes that allow Cablevision subscribers to access Two Way Services (i.e., Cablevision-specific boxes).

It appears to the Court that although Plaintiffs have amended their Section 2 claim in form, the substance remains the same. Defendant has similarly construed Plaintiffs' amended Section 2 claim. Although Plaintiffs may certainly disagree with this Court's January 14, 2011 ruling concerning the viability of a Section 2 relevant market limited to Cablevision-specific boxes (and thus choose to stand by their Section 2 claim, as pled), Plaintiffs may not amend their claim in a manner that either disregards this Court's January 14, 2011 ruling all together or makes it entirely

---

[6] (Pl. Opp'n Br. at 33).

[7] (Pl. Opp'n Br. at 35).

unclear whether their claim has, in fact, been amended. Because the Court cannot decipher whether Plaintiffs' Section 2 relevant market is limited to Cablevision-specific boxes or instead encompasses all cable boxes that allow two-way communications, the Court finds that Plaintiffs' Section 2 claim fails to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). In particular, the Court finds that Defendant has not been provided with proper notice of the specific grounds upon which Plaintiffs' Section 2 claim rests, in violation of Rule 8(a)(2). See generally In re Insurance Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) ("Under Rule 8(a)(2), a complaint need present 'only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' ") (quoting Twombly, 550 U.S. at 555). Given the nature of this particular deficiency, and because this claim was asserted, for the first time, in Plaintiffs' Amended Complaint, the Court will grant Plaintiffs leave to amend this claim. Plaintiffs' Section 2 claim is, therefore, dismissed without prejudice. To the extent Plaintiffs did not intend to plead a Section 2 relevant market limited to Cablevision-specific boxes (i.e., those boxes specifically distributed by Cablevision), their complaint must be – clearly and unequivocally – amended accordingly.

### III. State Law Claims

#### A. Unjust Enrichment

Once again, Plaintiffs effectively concede that their state law unjust enrichment claims cannot survive in the absence of their antitrust claims. (Pl. Opp'n Br. at 39). Having found deficiencies in both of Plaintiffs' antitrust claims, Defendant's motion to dismiss Plaintiffs' unjust enrichment claims is therefore granted. Plaintiffs' unjust enrichment claims are hereby dismissed without

prejudice.

## **CONCLUSION**

Based on the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. Plaintiffs' Section1 per se tying claim and Section 2 monopolization claims are hereby dismissed without prejudice. The Court declines to rule on Plaintiffs' Section 1 rule of reason claim at this juncture inasmuch as necessary amendments to Plaintiffs' Section 1 per se tying and Section 2 monopolization claims will affect Plaintiffs' rule of reason claim. Plaintiffs have (30) days in which to file a Third Amended Complaint which cures the pleading deficiencies discussed above.

An appropriate Order accompanies this Opinion.


DATED: July 21, 2011

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE